One case, to be orally argued, held over from a recent sitting, it's number 20-40182 Valdez v. Superior Energy, and we'll hear from Mr. Brazeal. Good afternoon, and may it please the Court. I hope I can keep you guys awake after lunch with the riveting world of Fair Labor Standards Act settlement standards and review. Before you get into the meat of it, I have a question, procedural, jurisdictional, however you want to label it. You know, we review judgments, not the actual reasoning of the district court. So what you first asked for, you all came to a settlement and you asked the district court, dismiss the case. We've settled. You don't have any further role here. Dismiss the case and, you know, they'll write checks to us and we'll be done. Well then, the district judge said no, and all this stuff happened, all these filings and discussions whether court approval is necessary. But then at the end of the day, she dismisses the case. So I guess my question is, why didn't you get what you want and why can't now the defendant just write you these checks and everyone goes on their merry way? We asked that question to the defendants and the answer came back that they believe, and I'm sure Mr. Smith will explain, but I believe their understanding was that the law of the case was such that they couldn't issue a check to me given that she was, Judge Togliatti was requiring court approval. So they didn't want to cross that kind of line when they were doing that. Does that make sense? Yeah, and I thought that might be one of the answers, but it's unclear to me. Yeah, I mean, I guess that's the cautious view, but I mean, you're back in the world you wanted to be in, which is outside. There's no pending case. I mean, people can send money to each other anytime they want, generally speaking. That's right. And if they're worried about, I mean, the limitations would certainly have run, like you couldn't reassert these claims if that's the concern. I think that's right, Your Honor. And just to note for the record, and I'm not sure if it came across in the filings, the portion of the settlement dealing with the plaintiffs has already been paid out. So once that was approved by the judge, the defendant went ahead and went through the process and issued the checks to the plaintiffs. So the only thing that remains now is, back to your question . . . Maybe that's why they don't want to pay. That may well be, but we made sure to get the portion that was approved processed as quickly as we could. Say that again. I just have trouble on this side of the courtroom hearing. That's okay. It's not your fault. So there were two separate amounts set forth in the settlement agreement, one for kind of a bulk number for the plaintiffs, the group of plaintiffs, and then a separate number that was set aside for attorney's fees and costs. Okay. The plaintiff's portion has already been paid out. Okay. So that portion that was approved by the judge, that whole thing has been processed and dealt with. In fact, the lead client called me the other day and wanted a copy of the agreement because it's got to answer tax questions on it. Okay. From last year. So it's just the attorney's fees? That's right. That's right. So that sort of brings us to where are we at with this case? And it seems to me that after re-reviewing some of this information that the easiest issue here is for the court to know that the district judge, to the extent a review was done or necessary, right, applied standards and she found that plaintiffs met those standards. That should have been, in plaintiff's view, the end of the inquiry at that point. Who's the best authority for that? It would be the Brooklyn Savings Bank v. O'Neill and the Ganji cases that talk about the scope of review. As you know, Your Honor, there is no place in the FLSA statutory language for review by a district court. That's completely a creation of case law from the Supreme Court. Well, Ernest Hand was in favor of it, was he not? He may well have been, Your Honor. And I don't know that it doesn't – that there doesn't need to be some look. In fact, I think there should be some look. I think that Congress, when it passed the Fair Labor Standards Act, put into place one of the most far-reaching and protective standards at the time. And so in Ganji and in Brooklyn Savings Bank v. O'Neill, the court was very clear that there are some things that you can't waive, and so courts are going to have to look at this at some point. However, the review that was set forth in those two cases was a review toward the waiving completely of a statutory right as opposed to, say, the settlement or the compromising of claims under – The first one was about liquidated damages, right? That's right. And then the second one was about whether you can waive coverage. I mean not waive it, but – It may have been reversed. I think it may have been coverage first and then liquidated. Well, Ganji was about coverage, I thought. Okay. But I don't know. I could be wrong. Those are the two issues, right, whether or not – Yeah, that's it. And then the rest of it, a bona fide dispute about hours. Right. So what Congress was getting at is this law is important, and we don't want people to contract around it. So you can't agree in advance. You're not going to get paid over time, right? That would abridge your right. It would waive your right up front. But if there's a dispute as to how many hours you've worked or what the rate of pay should have been, now that's more of a compromise than that's a settlement. Right, and so that's what Martin carves out and says, yeah, if the dispute's – the worker says, I worked ten overtime hours. The company says, no, just two. Well, you've got to work that out. We'll allow settlements, and courts don't have to bless those. But when I look at this case, there wasn't – I've looked at the answer. The defendant answered with a class saying these were exempt workers from what I see. So why isn't – it seems to me it's not just a dispute about hours worked, which would seemingly be Martin, outside the court. But it seems there was a classification dispute, which does require court approval, right? So one, am I right that a classification dispute does require court approval? Two, was there a classification dispute here? I don't think that a classification dispute is like giving up your right to liquidated damages or giving up your – saying that you're covered. I think it's a different animal. It's more along the lines of a merits argument, especially when you look at the cases where you have to get into the facts of what specific job duties do people do and those kinds of things. But I think there's an opinion – Judge Rodriguez really came up with this whole thing that was endorsed in Martin. And I believe there's a Judge Rodriguez opinion where he says, no, this is a debate about both hours worked and whether they were exempt, and therefore, court approval is necessary. I don't know if you know that case. I know what you're talking about, Your Honor. And it really is how you frame the issue. If you frame it one way, it could be. Well, wait a minute. I mean these – wasn't the issue whether these people were exempt or whether they were contract? Whether they were exempt or not contract but non-exempt. That's classification to me. It was, Your Honor. That wasn't an issue that was really pressed in the litigation to the extent that we were litigating that case. Really, the fight was about hours. I mean all of our focus and all discovery had focused on the hours that were done, that were worked. How is the district judge supposed to know this? I mean if the rule is hours don't need court approval, they're just supposed to take the lawyer's word for it when the lawyers say, okay, we've settled. And this was really just about hours, so it's none of your business, Judge. I mean how does the judge – they're not at the deposition. They have 400 cases on their docket. Correct, Your Honor. I believe in our submission to the court explaining what the central issue was, we highlighted the focus on that. We didn't talk – I don't think exemption came up in either of our affidavits or declarations. The other thing, Your Honor, is – So they have to take – the judge has to take the lawyer's word for it. That's right, Your Honor. And to some extent, that's why I think that there should be a look at these settlements to make sure that statutory rights aren't being waived. Why not look at the pleadings and see that they did assert these were exempt employees as a defense? So that's not, though, the employee waiving a statutory right, though, right? That's the employee arguing that the company got it wrong when they classified the employees the way that they did. So it's not like a complete wholesale waiver of a right. It's actually more of a defendant's opportunity to argue that individuals are exempt from that requirement, right? That would be the issue there, not whether or not workers were giving up certain rights. And that's – I'm sorry. I'm sorry, Your Honor. I didn't want to interrupt you and Judge Casa. I'm done. Go ahead. What's your view of the Cheeks case? Cheeks is an interesting case, especially when you put it alongside the case that came after it, I believe, called Hassani or Hasaki, that had to do with a Rule 68 offer of judgment and whether it had to be reviewed. Both of those cases are asking, do these ways of getting out of court have to be – go through approval? The Cheeks case was really unique because it was going under Rule 41, A1, A2 or so, and it was looking at specific statutory language in that rule as to whether the FLSA was an other statute that needed to be reviewed. Well, there's no doubt that they're talking about that, but they're also, at the last couple pages, talking in more general terms about the need, as they put it, examining the basis on which district courts recently rejected several proposed FLSA settlements, highlights the potential for abuse in such settlements, and underscores why judicial approval is necessary. And they list three different conditions, one of which is a provision that would set the fee for plaintiff's attorney at between $40 and $43.6 of the total settlement payment without adequate documentation to support the award. Now, your fee in this case was at least 40%. In that ballpark, Your Honor. That's correct. Yes. So, Your Honor, let me start with Cheeks like this. I think you're seeing around the country judges wrestling with the extent to which there needs to be some paternalism over these FLSA settlements. I think that the reasoning in Cheeks, when you look at the panel that comes after it in the Rule 68 Offer of Judgment case, it takes the same kind of dismissal but under different language of the federal rules of civil procedure, and it comes out differently. And the analysis there was that courts don't need to be reviewing it. You know, to me, the Labor Standards Act either has a provision, I mean, it either contemplates approval of attorney's fees or not. And that's irrespective of specific rules. I don't understand the rules themselves to authorize or not attorney's fees. So, Your Honor, the statute, the statutory language says that plaintiff is entitled to recover attorney's fees from the court if there is found to be a violation and there's a judgment that is then entered. Well, let me put it to you this way. What would have been the total amount of fees payable to your plaintiffs? Under debt. Labor of hourly wages. It would have been whatever the total is. I mean, you obviously settled, but theoretically, all $2.5 million could have gone to your clients, could it not? The way this is structured, Your Honor, the money that doesn't get paid to us as attorneys, there's no provision in the agreement that it goes to the class, and that's because we kept these numbers separate. We didn't bid one against the other. We made them, they were negotiated as separate numbers on our end. That means that if the court were to award us half of what we were seeking, that money would have just stayed with the company. It wouldn't have necessarily gone back to the individual. So, it's not the . . . You would have gotten the same attorney's fees regardless? Is that what you're saying? No, Your Honor. We wouldn't have gotten the same attorney's fees regardless. If the court had cut us back, we would have gotten what the court gave us, but the company would have kept what we were seeking. Isn't that because the FLSA is a two-way street? On the one hand, it protects . . . I mean, I think that's maybe in the Cheeks case itself. On the one hand, it protects the expectations or the legal rights of the employees. On the other hand, it's not there to penalize a company other than the double or triple damages that are specifically authorized by statute. That's true, Your Honor. But in this instance, the company actually agreed. We reached an agreement and settled the issue of attorney's fees. So, it's not like the company agreed to something that was penalizing it. It was agreeing to a number that it thought was reasonable. The court has to . . . That may well be the case, and that may be decisive here. But, you know, it seems to me the court gets to look at this in terms of the contest about coverage as well as about amounts. So, Your Honor, I think those are distinct. If you follow the analysis that's in the Eighth Circuit case, the Barbie versus the Big Steel case, they basically said where there's a settlement reached on attorney's fees because if there's not a settlement reached, the court has to decide it. So, if a settlement is reached, which we want people to do, then there should be no review of the attorney's fee agreement in that instance. They were very clear. They didn't go further and say, you know, what kind of review is required of other parts of the case. They simply said when attorney's fees are settled and it's done independently, as it was done here, then the court has no business basically overturning that agreement between the parties because in that instance, the plaintiffs are not getting cut down by the provision of our fees. That money goes back to the company. So, it's not a zero-sum game like some people have set it up to be, and I think that's some of the concern is that if a lawyer takes too much, that the plaintiffs get too little. Well, who's looking out for the – I mean, the company, they care about the bottom line that they're paying. They don't care who gets it. Right, that may well be, Your Honor. But here, we came up with an amount for the individuals, which the court found was a reasonable amount and met all the standards. It's not, you know, for the court to say it needs to be more fair or a little less fair. It's either fair or it's not, and here the court found that it was, and in this instance, there was no cutback for the class. Does that make sense, Your Honor? How many hours did you have in this case? Your Honor, as we're sitting here right now, I don't know the number of hours. I could give you more of a ballpark on the dollar amount. It's not in the record, however. A ballpark on what? On sort of a lodestar analysis, like hours times – I'd be sort of interested in that, yes. Okay. I guess you asked if it makes sense. I guess from an economic standpoint, I forget the exact numbers here. Let's say the company's paying $100,000, and they structure it so $60,000 goes to the workers and $40,000 goes to the lawyers. Well, if the judge is saying, well, $40,000 is too much for the lawyers' work, well then I would think the company would have given 80, you know, more to the workers, and they could have even paid just $90,000 but given more of it to the workers, right? I mean it's . . . Well, if that's how . . . If they were willing to pay $100,000, why wouldn't they be willing to pay $100,000 with a different allocation, I guess is my way of looking at it economically? They might well be, Your Honor, but in this case we kept the numbers separate, and we came to numbers that we thought were . . . I guess that's . . . I mean separate, I guess, yeah, okay. I just think economically they're looking at the number going out the door. Right. Well, in this instance, the company would, I'm sure, love to pay less, and if it cuts the feedback, then it would do so. I think my time has expired, Your Honor. It has. Yes. Thank you. Okay. Mr. Smith? Does Superior have money to pay off this remaining amount of judgment? Your Honor, I can tell you I'm not sure on that. I know they've emerged from bankruptcy. We notified the court when that occurred as the court had required us to do, so sitting here today, I can't tell you one way or another. All right. May it please the court, Larry Smith and Drew Burnside for the Appleese in this matter, Superior and Warrior Energy Corporation. Maybe I can go ahead and address a question that Judge Costa asked before about why we just didn't write a check, and there are really three reasons for it, Your Honor. One is, as Mr. Brazil indicated, we felt when the court said, essentially, I must approve that, we felt we were bound by it. That was one reason that that's the case. The second reason is the contract between us actually has the requirement of not having to pay until twenty-one days or fourteen days after approval. The third reason is really the policy reason expressed by the district court as far as why she would not apply margin, and that would be that there would be no true indication that there would be any bar that this would be effective against an enforcement later on. If somebody would have paid under that and the court said, this may not apply or may not be effective, then you just open yourself up, at least potentially, for something else coming down the line. I think those are really to address your earlier question, Your Honor. If we affirm here, the plaintiff's lawyers are never getting a dime, unless they can get it out of their clients or something. If we affirm here . . . Right. If the court decides that for whatever reason Martin doesn't apply, and we're just going to keep the judgment as it is in place, then yes, right now there's no award of fees for that. That would be correct, Your Honor. There's also a question a little bit earlier about the exempt status in this case. Yes, exemptions were pled, one under the MCA and I believe one under the executive as well. However, as facts developed during the case, those were not matters that were pressed. As Mr. Berzillo suggested before, when we got to settlement discussions regarding the case itself, it really just came down to what are the hours and the different views that the parties had concerning what the hours were in the case. Also, that's really what was reflected to the court in submissions to the court in May of 2019. You have to submit all the stuff to the court to show that it's a Martin case. At that point, if you're going to the court to prove that, I'm not sure really how more efficient this whole process is, right? The court's then having to decide, well, is this really a dispute about hours, in which case I don't need to approve. Probably just easier to just review it and approve it at that point. You're not really eliminating . . . like a breach of contract case settles, you just tell the court dismiss it, the court doesn't know anything about what's going on, and everyone moves on. Here, you have to file all this stuff. I'm just not sure what's being gained. Exactly. There's a recent case out of the Northern District of Texas that we filed our supplemental pleadings called VIRM, in which the court essentially said that. Martin authorizes settlement or permits a settlement basically when the people are represented, and quite frankly, having to go through this again or review process like you suggested, Your Honor, there's no efficiency involved. In fact, it becomes inefficient along those lines. I agree. There is that additional layer that maybe adds not to judicial inefficiency, which is why Martin and the cases cited in Martinez that Martin relied upon . . . No, if this plaintiff's lawyer is claiming a million dollars, there was plenty of inefficiency already in terms of expenditure of time, and it's hard to see that just complying with the court's request and approving fees wouldn't . . . was going to measurably decrease what the efficiency would be. I mean, from that perspective, I would agree, but again, the general notion of what does the court have to do and is there really efficiency being gained if it can be settled, a settlement versus having to go through the . . . I guess my point, it seems from the district court perspective, it's easier just to approve the settlement than to decide whether this is a Martin case or something else. I mean, it seems to me that's a more complicated question in a lot of cases. You know, is it about an exemption or is it really about just hours? I mean, versus just look at the settlement and approve it. I mean, I guess I'm doubting the wisdom of all of this Martin exception because to figure out whether the exception applies seems more of an undertaking than just approving the settlement will often be. Well, I think . . . As this case shows, look how many motions and opinions there are on Martin and all this stuff. Absolutely, there are a lot of different opinions about what Martin says, what it doesn't say, you know, tracking back to Lynn's Foods as well and what is required to get approval of a settlement of an FLSA collective action case, but Martin is out there and the Supreme Court cases are out there that say . . . well, Supreme Court cases say we're not going to really opine on the bonafide dispute. Martin says bonafide dispute, you can absolutely settle it out. It says private compromises and that's kind of where we were in this case. In a bonafide dispute, I don't know that it needs to be, for lack of a better word, that rigorous of an undertaking. I think sometimes in some courts, although these are courts approving it maybe after it's been submitted, have looked at the pleadings and some courts have looked at the course of litigation. So I think when you get to a point that this case was at in May of 2019 when we submitted our briefs, you've got years of litigation, you've got three mediations, you've got some pretty, what I would thought at the time, some hotly contested litigation over the notion of representative discovery, also some contest related to the issue regarding certification. So you get at that point and there's really, I mean, pretty clear that there have been many disputes. And I think you look at Martin and particularly footnote 10 about what Martin is, I think, really getting at and the crux. And that crux is the notion that we need to guarantee that the employees are adequately represented in this. And if you have counsel, that substitutes or that becomes the adequate representation. When they distinguished Lynn's Food on this issue, that's really what they were talking about. And that is the notion that in Lynn's Food, the individuals weren't represented, they didn't understand the DOL. I'm sorry. I'm sorry. No, no, no, go ahead. The DOL had filed a claim and many didn't even speak English. And those were the concerns. And I think where Martin was going and relying on the Martinez view of the history of these cases was that guarantee or that need for protection that maybe Lynn's Food individuals didn't have because they weren't is met when you have lawyers. And they specifically commented in Martin, again going to footnote 10, that the Martin settlement was done in the context of litigation. Again, litigation filed in California that was later moved to Louisiana, but it's still in the context of litigation. So the notion that the adversarial context of these suits is what provides the protection that really was part of what these cases all go back to. And that is making sure that employees are protected from overreaching by their employer when these cases come about. And that that is what guarantees that. And that's the adversarial position that comes about in that context. So you're asking for the same thing the other side is, right? You both think this did not require court approval? Yes, Your Honor. This did not require court approval. So if you were convincing us, if you were to convince us both of you, we would issue a ruling saying dismiss the case, which you did. That's what I find a little odd. But you shouldn't have said bad things about the settlement because that wasn't your business under Martin. I mean, basically, I'm just . . . Yeah, I mean, I think that'd be correct. I think, I mean, as I was thinking about this, it was an order, an opinion or whatever that would say, Martin applies to litigation, not just pre-litigation, but litigation. And as a result of that, this should have been approved. And whether you end up vacating the judgment or not, I mean, that's a tougher question. But once the key is that this should have been approved as a result, then at least as far as what's left in this case, then as far as our contractual liability, it's been approved anyway. But you're saying it shouldn't have been approved. Go ahead. Yeah. Let me go back to Cheeks again because Cheeks is a recent opinion of the Second Circuit. Yes. And it goes through all these cases. And frankly, what it concludes is that Martin doesn't apply to the situation before it, which is whether court approval is necessary and whether the parties can enter into a private, stipulated dismissal of FLSA claims with prejudice without the involvement of the district court or DOL. So they say here are the problems that can arise in these settlements. Right. Noting the need for protection of the employees, but a battery of highly restricted confidentiality provisions and strong tension with the remedial purposes of FLSA, an overbroad release, a provision that would set the fee for plaintiff's attorneys at between 40% and 43% of the total settlement payment, a provision referring to another case, plaintiff's attorney will not represent any person bringing similar claims against the defendant. Now, all of those are well-taken provisions. And if we accept your mutual argument, we open FLSA settlements up to these kinds of situations, don't we? Your Honor, in that context, obviously, those provisions can be part of those things. But then I think it gets back to where we originally were and where Martin was, and that is under what circumstances should the court, in fact, be reviewing these cases? And I think . . . Well, the pre-existing case, was it not that had been settled? There was another dispute that had been litigated between the parties, right? In Martin, it was an ongoing matter between the union and the company, and they had reached a resolution, but they'd also filed suit. So as this court said in Martin, it was not outside the context of the suit. But I think it goes to . . . I mean, your question goes to what do we do about the potential for abuses in these settlement agreements? That's what I understand, those identified in the Cheeks case. And then I think the question goes back along those lines to, you know, what is the role of the court in the first place as far as reviewing an FLSA settlement agreement in litigation? And at least Martin, relying on Martinez, suggests that when this came up, I mean, back in 1938 and then what the Supreme Court said, that that was a point in time when the courts felt that, and I think the court used the notion of inflexible or rigid interpretation of those requirements, and that now as we've moved toward a policy encouraging more settlement, that that type of review that was authorized in the past and is reflected in Cheeks or Linn or things like that is no longer . . . I was on the panel in Martin, but I hope I'm never to be accused of approving the jurisprudential philosophy of the evolving statute. I would never accuse Judge Jones of that. Anyway, I think that's where it kind of would go to, that if there's proof through the pleadings or whatever, then these . . . Well, my point is just this. I mean, you have these kinds of sort of pesky, sort of surreptitious provisions that can go into a settlement, and if you say, oh, well, it's represented, the aggregate is represented by an attorney and therefore it must be okay. Well, I mean, look at other kinds of cases, or I would refer to other kinds of cases, Your Honor. For instance, sex discrimination cases. I don't care about sex. We're talking about a very specific statute which prescribes very specific rights for employees together with rather specific exemptions together with special . . . I mean, the whole point is to specially protect those employees while also drawing a line for practices. I mean, that's why you have thousands of pages of regulations, and you have the potential for both double damages and triple damages on the employer. So the employer isn't supposed to be exploited either, but except where the statute says, and if an employer is able to pay a bunch of money to settle out one group of claims, I mean, as you know, FLSA claims in the oil industry are a big thing right now, and you set the bar, your client sets the bar. I mean, if it's bankrupt, you could have settled with him for $2 million and you may never be able . . . poor fellow may never get a penny from it. So there's no limit on what a company can do to buy itself peace while shortchanging possibly even the whole rest of the industry, but also as collateral damage the employees. I don't see the harm. I mean, I just . . . It's a protectionist enterprise, it seems to me, and I don't see the harm in judicially approving just a settlement rather than let parties just stipulate in the dark and go away. Along those lines, Your Honor, I would say one of the differences or one of the—under the FLSA collective type action is there's actually an attorney-client relationship between the plaintiff's attorney and everybody who joins, and so that is part of the responsibility when negotiating something. It's not like a class—the Rule 23 class action. So there's actually that attorney-client relationship. So quite frankly, if there is some nefariousness or inappropriate type of provisions, as you pointed out, the Chief's decision pointed out, that would be where the remedy would be, would be between the lawyer and the clients. Well, what about other people who didn't join the collective action? They retain their rights. I mean, since it's an opt-in, they retain their rights, so anything that happens between the parties that are part of it does not impact them. They are not affected by it. But, of course, if there are restricted confidentiality agreements and overbroad releases and so on, you never know. Absolutely. I mean, that is one thing. I mean, if the—you're just allowed to stipulate the agreement, then yes, you're right. You may not know what those provisions are, except to the extent that the clients may bring that up at another time. Go ahead. I just wanted to understand a couple of things about your bottom line. In your view, although a district court should be able to look at the settlement and see whether it was a bona fide settlement of liability, district court ought to be able to look at that, right, under Martin? I don't think under Martin they get to necessarily look at the settlement agreement. I think Martin just stands, is there a bona fide dispute? Well, yeah, but the district court has to be able to tell that. I think Judge Costa asked you that. Yeah, yeah. Okay, so district court looks at that and says, in your view, the way it ought to work is the district court looks and says, okay, there's a bona fide disagreement here about number of hours worked. This isn't about classification. This isn't about liquidated damages. This is a bona fide dispute about liability. I mean, at that point, if the district court says yes, it's over. Yes. Okay, and with respect to attorney's fees, then what happens? Just nothing? I mean, no. I mean, from, I mean, the entire agreement between the parties would be a package. So both of those . . . Yeah, but the district court doesn't get to then go to attorney's fees and say, too high, I don't approve those. Exactly. Okay, so I get that. I get it that that's your position. I'm not saying I agree with it, but that's your position. And so in terms of this appeal, Judge Costa's question, which goes to jurisdiction, is, asked the other side, is this case was dismissed, right? Yes. But you would ask, what would be the sort of the decretal language from us? What would we say? I, again, I think you would, again, say the court erred in determining that Martin did not apply to a case under litigation. Okay. So that, I mean, is that affirmed? No, I think in that case, it would be, should have, again, Martin should have applied, and therefore, you'd have to vacate the determination . . . Okay. . . . or revert the determination that did not award attorney's fees. Yeah, otherwise, it's hard to understand why we have jurisdiction, right, if we don't . . . we have to do something. Right, right, and I think that's what it would look like. Okay. We order and then vacate. All right, well, I think I understand. This is . . . And with instructions to dismiss. But it's been dismissed. Yeah. I mean, again, it's been dismissed. I think it'd come from this court. Well, let me, I need to ask one follow-up. He emphasized, Mr. Brzeal emphasized the idea that you negotiated the settlement amount because after all, all you were really concerned about was ours, which I find disputable, but anyway, you negotiated the settlement separate from the fees. And he seemed to argue that that made . . . I hope I'm not putting words in his mouth, that that was a critical way to determine the viability or the prudence of the settlement. You know, in my recollection, I think it was in our submission from May of 2019, was that the specific number of attorney's fees was not something that was separately negotiated. It was separately provided for in the agreement, but was not separately negotiated outside the notion of a percentage. Okay. And I believe we had that in our May 2019 submission. Thank you. All right. Thank you. Mr. Brzeal, I'm not sure what you want to say in addition to . . . Just a couple of things, Your Honor. First of all, I think the court here today can get . . . can still find that Martin doesn't apply and still then, because the court below went ahead and analyzed the fairness and reasonableness of the settlement for the parts that deal with the worker's rights, the things that they were supposed to analyze. Of course, the judge did that. The only question that then is left is whether or not, you know, the court was proper in saying you have to turn in fees as part of that. But you're saying she shouldn't have even gotten into, is it fair for the workers? Well, no, I'm saying . . . They're Martin. You don't get anything. I'm saying that there has to be some kind of review under Gange and under Brooklyn Savings Bank about . . . if someone has to look and say, are you waiving your guaranteed rights, there has to be at least that look. Which is whether there's a bona fide dispute about hours. Correct. Correct. Is that another way? So the Eighth Circuit found this exact way, that the statute speaks of allowing fees in addition to a judgment awarded which treats the merits of the FLSA claim and the attorney's fees as distinct. And then as a result, that the court judgment on settled merits would be separate from any review of the settled attorney's fees. So the attorney's fees would still be, you know, indisputed and the courts want us to try to resolve those things and not have them . . . not have courts go into the business of rewriting those. Here, on our end, on the plaintiff's end, we knew what the clients would be getting and we were taking a hard look at is that within a range that we would expect the clients to get at trial, right? So when we submitted to the court, you know, what the ranges were and that sort of thing, we did that with an eye to what they're getting after the fees are taken out, but we kept them as a separate number. So it was always to Mr. Valdez who I always had to call and talk to about these proposals. It was always in terms of what he was getting. We weren't even talking about what I would call grossed up numbers. So we gave . . . Your agreement with your clients, it's not that you get a cut of their recovery? No, Your Honor. They assigned us the right to the attorney's fees. Okay. And so we get a cut of the overall . . . Is that typically the case in these wage and hour cases? Or do some people just say I get, you know, like other plaintiff's lawyers, I get this cut of your recovery? Well, it depends on how they define their recovery, right? If they throw fees into it, that's one thing. If they don't, that's another. But in our situation, they assign their rights to it. So this court doesn't have to necessarily, you know, say that Martin applies and therefore no review at all is necessary. You could still have a review because the judge did one here. At that point, that should have been the end of the analysis. There shouldn't have been anything further on attorney's fees. So the court did analyze this vis-à-vis the workers. And the only question that remains then is whether or not the fees should have been part of that. This Eighth Circuit case, Your Honor, sights to cheeks. Yeah. Give me the side of that. Sure. So it's Barbie versus Big River Steel, and it's 927F3-1024, Eighth Circuit, 2019. And this was squarely the issue in front of it was just the attorney's fees issue, whether the settlement of that needs to be reviewed by the court or not. I think that there's some amount of concern in cheeks that it's a fixed sum and a zero-sum game, and that if an attorney gets less, that will mean that other folks get more. That's not necessarily the case. We negotiate ours very, very differently for that reason. Well, but again, if you take the court has a hands-off approach, one never knows, right? Right. And I would just say this, Your Honor. This is an act that protects the company's rights to not overpay attorney's fees, right? I mean, they're smart. They've got one of the nation's largest employment law firms on their side. They know whether this is a good deal or a bad deal. They're not getting paid either. Well, I'm guessing if they're here and getting paid, if they're getting paid. But, you know, having the court review this and say, you know, let's protect the company, that's not what the FLSA does, right? It's really to protect the work. Well, my point, actually my point about that is that to the extent that the law provides, A, for attorney's fees and, B, for specific types of fees for the employer, that it is, indeed, sort of striking a balance. Right.  I understand, Your Honor. You know, one other thing about Cheeks, which goes back to my very first question, I noticed that case, the court, I guess, didn't approve the settlement, the district court, and they filed an interlocutory order under 1292B that the court approved. That's how that got up to the Second Circuit. It wasn't this sort of strange situation where we have the case dismissed and you want us to dismiss the case, but that's more just a comment. Yeah, I was going to say, Your Honor, it struck me as odd that the judge did what she did. I expected to get something different, not just a dismissal. I mean, even if the judgment said something, a case is dismissed and no attorney's fees should be paid, I mean, I don't know. There's just some . . . we review judgments, not usually just . . . Yeah. I mean, so I'm looking at Barbie and it was a district court's order that modified the attorney's fees, so that's how it got to the Eighth Circuit. In terms of the review of it, that's right, Your Honor. Yeah, here the judge just never said anything. She was silent on it, which under the rules as we read them was a final order and that's how we got here in terms of jurisdiction. In terms, Your Honor, of the paternalistic and we want to protect . . . you're saying the court is concerned about these bad provisions being in these settlement agreements, things like general releases and such. It's not the court's job and it's not protecting the workers to say that you can't have a general release of claims in an FLSA case, right? The FLSA doesn't require that. It's certainly in keeping with maybe the spirit of it, but it's creating whole new sets of review and really tamping down on some things that it ends up rewriting settlement agreements and not necessarily protecting the workers. Of course, we wouldn't be here if you just agreed to file a, you know, statement of your fees, right? I doubt that very seriously, Your Honor. I expect that the judge would have come up with a number and we would have probably had some concern about it and we may well have appealed at that point. I don't know what the number would have been. I don't know how she would have ruled. I was a little surprised overall. Well, I think that— Thank you, Your Honor. Thank you very much. Thank you.